No. 23-12230

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA

*Plaintiff-Appellee*

v.

RACHAEL MAIA WINSLOW

a.k.a. Pamela Henderson,

*Defendant-Appellant*

Appeal from the United States District Court

for the Middle District of Florida Tampa Division

D.C. Docket No. 8:20-cr-00140-MSS-MRM-1

## APPELLANT'S OPENING BRIEF

**Rebecca Castaneda**
The Castaneda Law Firm PLLC
Florida Bar Number 1007926
506 N. Armenia Avenue
Tampa, FL 33609
Telephone 813-694-7780
Email: Rebecca@CastLF.com
*Attorney for Appellant Rachael Winslow*

No. 23-12230

## UNITED STATES OF AMERICA v. RACHAEL MAIA WINSLOW

---

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The following people have an interest in the outcome of this case:

1.    David W.A. Chee, Assistant United States Attorney;

2.    Dino M. Michaels, Co-defendant's Defense Attorney;

3.    Frank Sebastian Visicaro, Co-defendant;

4.    James A. Muench, Assistant United States Attorney;

5.    Mac McCoy, United States Magistrate Judge;

6.    Mary S. Scriven, United States District Judge;

7.    Rachael Maia Winslow, Defendant/Appellant;

8.    Rachelle DesVaux Bedke, Assistant United States Attorney;

9.    Rebecca L. Castaneda, Defense Attorney.

10.   Sean Siekkinen, Appellate Division.


There are no corporate non-governmental entities involved in this case.

## STATEMENT REGARDING ORAL ARGUMENT

The defendant respectfully submits that oral argument is necessary for the just resolution of this appeal and will significantly enhance the decision-making process.

## TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement ...................2

Statement Regarding Oral Argument ........................................................3

Table of Contents ......................................................................3

Table of Citations .....................................................................5

Jurisdictional Statement ...............................................................7

Statement of the Issues ................................................................8

    I.  Whether the statute of limitations was properly tolled..……………………8

    II. Whether the District Court abused its discretion and committed plain error in concurring with the United States' leadership enhancement when imposing Ms. Winslow's sentence……………………….…………..8

    III.Whether the District Court abused its discretion and committed plain error when not using the jury's special verdict when calculating forfeiture…………………………………………………………………..8

Statement of the Case…………………………………………………………………..8

 (i)   Course of Proceedings ....................................................8

 (ii)  Statement of Facts ......................................................10
      i.   Personal Background ....................................................10
     ii.  The Offense ...........................................................10
    iii.  The Trial and Sentencing………..……......................................11

A. Trial…………………………………………….………………11

B. Sentencing……………………………………..…………………13

iv.    Standards of Review ..............................................................16
    I.    Whether a factor is a permissible ground for a downward departure from the Sentencing Guidelines is a question of law…………………………………………………………16

    II.    Whether the reasonableness of a sentence is reviewed under an abuse-of-discretion standard……………………………………17

    III.    Whether if the appellant did not preserve an issue for appeal, plain error review is applicable…………………………………17

Summary of the Argument ........................................................................18

Argument ...................................................................................................18

    I.    Whether the Statute of Limitations was Properly Tolled……………...18
      a.    The United States Failed to Provide Notice to the Defendant….21

      b.    Evidence from the Government of Mauritius was Excluded at Trial……………………………………………..…………23

    II.    Whether the District Court abused its discretion and committed plain error in concurring with the United States' leadership enhancement when imposing Ms. Winslow's sentence………………..26

    III.    Whether the District Court abused its discretion and committed plain error when not using the jury's special verdict when calculating forfeiture……………………………………………..32

Conclusion .................................................................................................35

Certificate Of Compliance ........................................................................36

Certificate Of Service ...............................................................................36

## <u>TABLE OF CITATIONS</u>

**Case**                                                         **Page**

Brady v. Maryland, 373 U.S. 83 (1963)……………………………………….14

United States v. Bush, 126 F.3d 1298, 1299 (11th Cir. 1997)…………………..16

United States v. Kim, 364 F.3d 1235, 1239-40 (11th Cir. 2004)…………………16

United States v. Miranda, 348 F.3d 1322, 1330 (11th Cir. 2003)……………...17

United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006)………………17

United States v. Jordan, 582 F.3d 1239, 1249 (11th Cir. 2009)…………………17

Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007)………………17

United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009)……………………17

United States v. Jones, 743 F.3d 826, 829 (11th Cir. 2014)………………………17

United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005)………………17

Pendergast v. United States, 317 U.S. 412, 418-20, 63 S.Ct. 268, 271,

87 L.Ed. 368 (1943)………………………………………………………………19

United States v. Gilbert, No. 97-2208 (11th Cir. 1997)…………………………..19

United States v. Habig, 390 U.S. 222, 226-27, 88 S.Ct. 926, 929,

19 L.Ed.2d 1055 (1968)…………………………………………………………..20

United States v. Lovasco, 431 U.S. 783, 789 (1977)……………………………..20

United States v. Holmes, 18-CR-000258-EJD at *9 (N.D.CA., 2020)…………...21

United States v. Pacheco, 912 F.2d 297, 305 (9th Cir. 1990)……………………..21

United States v. Mary Marr, 8:18-cr-167……………………………………..22

United States v. Gabriel Torres, 318 F.3d 1058 (11th Cir. 2003)………………..25

Black v. United States, 561 U.S. 465, 472 n.11 (2010)…………………………33

Wood v. President of Spring Hill College,978 F.2d 1214, 1221 (11th Cir. 1992)..33

Golub v. J.W. Gant Assocs.,863 F.2d 1516, 1521 (11th Cir. 1989)……………..33

Pate v. Seaboard Railroad Inc.,819 F.2d 1074, 1082 (11th Cir. 1987)……………33

United States v. Humphrey, 164 F.3d 585, 588 n. 3 (11th Cir. 1999)……………34

States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)…..34

Carter v. DecisionOne Corp.,122 F.3d 997, 1005 (11th Cir. 1997)………………34

Bateman v. Mnemonics, Inc.,79 F.3d 1532, 1543 (11th Cir. 1996)………………34

McNely v. Ocala Star-Banner Corp.,99 F.3d 1068, 1072 (11th Cir. 1996)……….34

Wilkinson v. Carnival Cruise Lines, Inc.,920 F.2d 1560, 1569 (11th Cir. 1991)…34

**Statute**                                                                        **Page**

18 U.S.C. § 3231……………………………………………………………7

18 U.S.C. § 3742……………………………………………………………7

28 U.S.C. § 1291……………………………………………………………7

18 U.S.C. § 1956(h)…………………………………………………8,9,10,11,13

18 U.S.C. 3292(b)(3)………………………………………………………..9

18 U.S.C. 3292……………………………………………………………… 9

18 U.S.C. 3505……………………………………………………...……12,24

18 U.S.C. § 1956……………………………………………………………13

§2S1.1(b)(3)……………………………………………………………...13

18 U.S.C. § 3282…………………………………………………………19

18 U.S.C. §3282(a)……………….………………………………………21


**Regulation**                                                    **Page**
USSG §2S1.1(b)(2)(B)…………………………………………………..13

USSG §3B1.1(c)…………………………………………...13,26,31

USSG §2B1.1(b)(1)(K)……………………………………………….35

## JURISDICTIONAL STATEMENT

1.  The district court had subject matter jurisdiction of the underlying criminal case pursuant to 18 U.S.C. § 3231.

2.  The court of appeals has jurisdiction of this direct appeal from the judgment and sentence of the district court pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

3.  While not jurisdictional, the notice of appeal was timely filed on July 5, 2023, the same day of entry of the District Court's judgment and commitment order. Fed. R. App. P. 4(b)(1)(A).

4.  This appeal is from a final judgment and commitment order that disposes of all the parties' claims in this criminal case.

## <u>STATEMENT OF THE ISSUES</u>

I.   Whether the statute of limitations was properly tolled

II.  Whether the District Court abused its discretion and committed plain error in concurring with the United States' leadership enhancement when imposing Ms. Winslow's sentence.

III. Whether the District Court abused its discretion and committed plain error when not using the jury's special verdict when calculating forfeiture.

## <u>STATEMENT OF THE CASE</u>

### (i)   <u>COURSE OF PROCEEDINGS</u>

The United States (the "Government") initiated its criminal action against Ms. Winslow on April 2, 2020, when it filed an information (the "Information"). (Exhibit A - Dkt. 1) On May 20, 2020, the Government filed a superseding indictment, (the "Superseding Indictment"), alleging that Defendant and co-defendant, Frank Sebastian Visicaro ("Visicaro"), conspired to commit money laundering in violation of 18 U.S.C. § 1956(h)(the "Conspiracy Charge"). (Exhibit B- Dkt. 6 at ¶ 16) On June 19, 2020, Ms. Winslow entered a plea of not guilty to the charges.  (Exhibit C- Dkt. 35).

On January 28, 2022, Ms. Winslow filed a Motion to Dismiss, claiming that the statute of limitations period to charge Ms. Winslow had expired. (Exhibit D-Motion to Dismiss, Dkt. 117) Specifically, Ms. Winslow argued that she could not

be charged because the statute of limitations was not properly tolled and she was not provided notice. *Id*.

On February 9, 2022, the Government filed its Response, describing the investigation that gave rise to this case, including the preparation and submission of three numerous Mutual Legal Assistance Treaty (MLAT) requests to various countries. (Exhibit E - Response, Dkt. 125 at 2) The Government sent MLAT requests to Mauritius, Hong Kong, Spain, and Thailand, beginning with the request to Mauritius (the "Mauritius Request"). Information regarding the submission to Mauritius and the actions taken with regards to Mauritius were not provided to the Defendant prior to the filing of the United States' response despite being requested; the District Court also highlights this lack of information in its Order (Exhibit F- Dkt 139, Footnote 9). The Government argued that. pursuant to 18 U.S.C. 3292(b)(3), "[t]he statute of limitations [for the § 1956(h) charge] was suspended for a total of 901 days" after the Government requested evidence from Mauritius on March 31, 2017.  (*Id*. at 5) On April 28, 2022, the Court denied Ms. Winslow's Motion finding that the United States had properly suspended the statute of limitations pursuant to 18 U.S.C. 3292, through the MLAT request to Mauritius, and that Ms. Winslow had not shown actual prejudice caused by the suspension of the statute of limitations. (Exhibit F, Dkt. 139)

Ms. Winslow was found guilty at trial of Count One of the Superseding Indictment. (Exhibit G- Jury Verdict, Dkt. 239) The District Court sentenced Ms. Winslow to the custody of the United States Bureau of Prisons to be imprisoned for a term of 135 months with supervised release for the term of 36 months on June 28, 2023. (Exhibit H - Judgment, Dkt. 288). She was held responsible for a forfeiture amount of $14,401,052.00. *Id.* She is currently incarcerated under that sentence.

**(ii)    STATEMENT OF FACTS**

**(i)    *PERSONAL BACKGROUND***

Rachael Maia Winslow was born on August 30, 1967, in La Jolla, California. (Exhibit I - Amended Final PSR, Dkt. 278); Exhibit – J Sentencing Mem, Dkt. 277) She holds a Bachelor of Science in Psychology from Georgia State University. (Exhibit I - Amended Final PSR (Dkt. 278)) Rachael's roots run deep in Roswell, Georgia, where she has lived for over three decades. (Exhibit I - Amended Final PSR, Dkt. 278) She has a son and is the primary caregiver to her fiancé, who suffers from kidney failure. *Id.*; Appellate Dkt. 11)

**(ii)    *THE OFFENSE***

Ms. Winslow was charged with one count of Conspiracy to Commit Money Laundering, a violation of 18 U.S.C. § 1956(h). Allegedly, Ms. Winslow engaged in criminal activities spanning from March 2009 to December 2013, in collusion

with Frank Sebastian Visicaro and Ronald Joseph Dembowski. (Exhibits A, B) They allegedly orchestrated an international wire fraud scheme with the primary intent to unlawfully enrich the participants, particularly those handling the administrative, back office, and money laundering facets of the operation. *Id.* The United States alleged that central to the conspiracy was the strategic use of various international and domestic financial institutions, and that Ms. Winslow and her co-conspirators methodically opened and operated multiple accounts. *Id*. The United States alleged that these accounts were not for legitimate financial transactions but were exclusively designated for receiving, transmitting, or managing the proceeds derived from the wire fraud scheme; and that the scheme used preexisting companies and their associated bank accounts to carry out similar illicit transactions. *Id*.

### (iii)    *THE TRIAL AND SENTENCING*

Ms. Winslow was adjudicated guilty of Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)) after being found guilty by a jury trial. Allegedly, Ms. Winslow engaged in criminal activities spanning from March 2009 to December 2013.

**A. Trial**

At trial, the Government ought to admit documents that were allegedly obtained from the Government of Mauritius via a Mutual Legal Assistance Treaty

Request ("MLAT'). (Jury Trial Day 1 - Trial Transcript, November 11, 2022, page 185) However, the District Court sustained Ms. Winslow's objection to authenticity and the Government's failure to provide a proper certification from the Government of Mauritius pursuant to the MLAT. (Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211) The District Court also sustained Ms. Winslow's objection of the Government's failure to comply with the requirements of 18 U.S.C. 3505 – Foreign records of regularly conducted activity. (Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211) Ms. Winslow objected to the documents allegedly from the Supreme Court of Mauritius as they did not certify that they were made at or near the time of the occurrence of matters set forth; such record was kept in the course of a regularly conducted business, and that the business activity was made such a record as a regular practice. (Jury Trial Day 1 - Trial Transcript, November 11, 2022, page 185)

The District Court found that Government failed to prove that the records they sought to admit were indeed from the Government of Mauritius in response to the MLAT; and that they were insufficient to prove as business records due to their lack of authenticity and noncompliance of the certification requirements of 18 U.S.C. 3505. (Jury Trial Day 1 – Trial Transcript, November 14, 2022, pages 185-187; Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211)

Prior to sustaining Ms. Winslow's objections, the Government was granted additional time to obtain the necessary certification from the Judge of the Supreme Court of Mauritius (Jury Trial Day 1 - Trial Transcript, November 15, 2022, pages 185-187). Despite the additional time, the Government was still not able to obtain the necessary certification, and the records were excluded at trial. (Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211)

The District Court also sustained Ms. Winslow's objections to the bank records from Deutsch Bank of Spain as an improper foreign record. *Id*.

## B. Sentencing

The United States Probation Office issued its Final Presentence Investigation Report (PSR) and included enhancements for specific offense characters pursuant to USSG §2S1.1(b)(2)(B), +2 because Ms. Winslow was convicted under 18 U.S.C. § 1956, +2), §2S1.1(b)(3), and +2 as the Government alleged this offense involved sophisticated laundering; 2B3.1(b)(3) (Exhibit I - Final Amended PSR, Page 27). Ms. Winslow also received a +3 offense level adjustment for her role in the offense pursuant to USSG §3B1.1(c) as an alleged organizer of the criminal activity. (Exhibit I - Final Amended PSR, Page 27) She was scored with a total offense level of 35, category I criminal history, with a guideline range of 168-210 months. (Exhibit I - Final Amended PSR, Pages 27, 28) The Final PSR calculated

the forfeiture amount attributed to Ms. Winslow at $14,401,052.00. (Exhibit I - Final Amended PSR, Page 33)

Prior to sentencing, Ms. Winslow filed her sentencing memo (Exhibit J - Sentencing Memorandum, Dkt. 277) and objected to the manner in which she was convicted, enhancements, the loss amount, and moved for a variance; Ms. Winslow also objected to the United States' multiple failures to identify related cases that the Government claimed were related but of which Ms. Winslow was either never notified (Albert Michael Revere) or notified only after filing a Motion in Limine as to the Admissibility of Witnesses Statements at Trial (Exhibit K - Dkt. 165). Ms. Winslow argued that she did not have a leadership role; and that the loss amounts were improper. *Id*. She also argued that the Government's failure to file a Notice of Related Case pursuant to Local Rule 1.07 was a potential violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and that it impeded her ability to prepare for trial so as to determine potential witnesses and exculpatory evidence, to allow for Ms. Winslow to impeach the credibility of government witnesses; that it was equally imperative to have this information at sentencing when there were multiple sentencing enhancement and, at the time of filing of the sentencing memorandum, $17,259,000.48 in alleged forfeiture. (Exhibit J - Sentencing Memorandum, Dkt. 277)

Ms. Winslow objected to the loss amount and argued three main points. First, she argued that a special verdict for forfeiture was decided upon by the parties and tendered to the jury for consideration; the jury found Ms. Winslow accountable for $525,595.62 (Guardian Holding Group LLC, at JP Morgan Chase Bank), $222,013.19 (First Assured Contact LLC, at HSBC Bank), for a total amount of $747,608.81. (Exhibit L - Proposed Verdict Form, Dkt. 168; Exhibit M - Notice re: Joint Proposed Voir Dire, Verdict Form, Jury Instructions, Dkt. 197) Ms. Winslow argued that $747,608.81was the proper loss amount for which Ms. Winslow should be held accountable because the jurors are the fact finders at trial, and the United States cannot substitute its opinion for that of a finding of fact by the jury. (Exhibit J - Sentencing Memorandum, Dkt. 277)

Second, she objected to the forfeiture amount put forth by the Government because no other alleged co-conspirator had been held accountable for including both the alleged lead organizer of the entire conspiracy – Mary Marr – and Ms. Winslow's co-defendant with whom she shares an indictment-Frank Viscario. (Exhibit J - Sentencing Memorandum, Dkt. 277)

Third, she argued that the loss amounts claimed by the victims were not amounts certain. Ms. Winslow argued that the United States called one witness who testified as a victim, Michael Sparksman; yet, the Government's list mentions "hundreds" of victims. (Exhibit J - Sentencing Memorandum, Dkt. 277)

The District Court overruled all of Ms. Winslow's objections with the exception of the loss amount. The District Court granted a variance to align with the loss amount of the alleged leader, Mary Marr, in the amount of $14,511,754.05. (Exhibit H - Judgment, Dkt. 288) After considering the arguments and findings of fact, the District Court sentenced Ms. Winslow to 135 months of imprisonment and three years of supervised release. (Exhibit H - Judgment, Dkt. 288) A fine was not imposed. *Id*. The District Court ordered restitution in the amount of $14,401,052.00. *Id*. This payment was to be made jointly and severally with co-defendants Frank Sebastian Visicaro and Mary Kathryn Marr. *Id*.

Ms. Winslow was ordered to forfeit assets involved in the conspiracy to commit a money laundering offense, including approximately $525,595.62 and $222,013.19 seized from accounts at JP Morgan Chase Bank and HSBC Bank, respectively. *Id*.

## iv. STANDARDS OF REVIEW

**I.**    Questions of law arising under the Sentencing Guidelines are reviewed *de novo*. *United States v. Bush*, 126 F.3d 1298, 1299 (11th Cir. 1997) (per curiam). Whether a factor is a permissible ground for a downward departure from the Sentencing Guidelines is a question of law. *United States v. Kim*, 364 F.3d 1235, 1239-40 (11th Cir. 2004). In reviewing a sentence, the Court reviews the factual findings of the district court for clear error and the application of the law to the facts

*de novo. United States v. Miranda*, 348 F.3d 1322, 1330 (11th Cir. 2003).  Finally, a sentence is reviewed for reasonableness. *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006).

**II.**    The reasonableness of a sentence is reviewed under an abuse-of-discretion standard. *United States v. Jordan*, 582 F.3d 1239, 1249 (11th Cir. 2009). The Court applies a two-step process which first examines whether the district court committed procedural error and, if there exists no procedural error, the Court considers the substantive reasonableness of the sentence imposed. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007); *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).

**III.**    However, if the appellant did not preserve an issue for appeal, plain error review is applicable. As per Federal Rule of Criminal Procedure 52(b), a plain error that affects substantial rights may be considered even if not brought to the court's attention. Under this review, the appellant bears the burden of demonstrating (1) an error, (2) that is plain, and (3) that affects substantial rights. This standard, as established in *United States v. Jones,* 743 F.3d 826, 829 (11th Cir. 2014) and citing *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005), ensures that even unpreserved errors are rectified, especially those that could lead to manifest injustice or affect the outcome of the trial.

## SUMMARY OF THE ARGUMENT

Ms. Winslow's statute of limitations was not properly tolled by the United States' request for legal evidence via a MLAT to the country of Mauritius. Ms. Winslow did not receive notice. Further, the United States did not receive foreign business records from the Supreme Court of Mauritius for use at trial.

Ms. Winslow's sentence is substantively unreasonable. The District Court denied a majority of Ms. Winslow's objections to the enhancements without proper consideration of the facts. Ms. Winslow received a significantly longer sentence than her indicted co-conspirator, Mr. Frank Sebastian Visicaro, and an almost identical sentence to Ms. Mary Marr, the leader of the alleged conspiracy, who made unilateral leadership decisions and assisted in carrying out the conspiracy utilizing almost none of Ms. Winslow's involvement yet Ms. Winslow was enhanced as if she was the right-hand woman of the entirety of the conspiracy. Further, the jury returned a special verdict with a specific calculated forfeiture amount; this is the proper amount that should have been utilized in calculating Ms. Winslow's offense level, not $14,401,052.00 to which Ms. Winslow was ultimately held accountable.

## ARGUMENT

### I.    Whether the Statute of Limitations was Properly Tolled

The general statute of limitations for noncapital offenses is five years. *See* 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). The parties do not dispute that this five-year limitations period applies to the offense of concealment of assets.    Instead, the dispute is about when the time began to run.

Statutes of limitations normally begin to run when the crime is complete. *Pendergast v. United States,* 317 U.S. 412, 418-20, 63 S.Ct. 268, 271, 87 L.Ed. 368 (1943) The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. *United States v. Gilbert*, No. 97-2208 (11th Cir. 1997)  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. *Id*.  Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. *Toussie*, 397 U.S. at 114-15, 90 S.Ct. at 860. When doubt exists about the statute of limitations in a criminal case, the limitations period should be construed in favor of the defendant. *See United*

*States v. Habig*, 390 U.S. 222, 226-27, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968).

Statutes of limitations have been said to be a defendant's primary safeguard against

the possibility of prejudice from preaccusation delay. *See United States v. Lovasco*,

431 U.S. 783, 789 (1977). A statute of limitations establishes an arbitrary cutoff

point; no showing of prejudice is required. Thus, a statute of limitations defense is

fundamentally distinct from a claim that a pre-indictment delay violated due

process, which involves an evaluation of the reason for the delay and any prejudice

to the accused. *Lovasco*, *supra*.

On January 28, 2022, Ms. Winslow filed her Motion to Dismiss Based on the

Statute of Limitations arguing that the *ex parte* motions with MLAT requests filed

during the course of the investigation did not toll the statute of limitations; the

United States failed to provide the required notice to Ms. Winslow to toll the

statute of limitations; and that equitable tolling of the statute of limitations due to

the covid-19 pandemic was inapplicable. (Exhibit D - Motion to Dismiss Based on

the Statute of Limitations and Incorporated Memorandum of Law, Dkt. 117).

The District Court denied Ms. Winslow's Motion, holding that the Government

had submitted a MLAT request to Mauritius and tolled the statute of limitations on

March 31, 2017. (Exhibit F - Order, Dkt. 139, page 5) However, the District Court

did not address Ms. Winslow's argument of the United States failure to provide

notice to her. Further, the District Court had not yet heard evidentiary motions on documents related to Mauritius during trial.

## A. The United States Failed to Provide Notice to the Defendant

The United States did not provide Ms. Winslow with notice and the statute of limitations was therefore not tolled. Ms. Winslow did not have notice of the Information or Superseding Indictment until the date of her arrest, which occurred outside the statute of limitations on June 8, 2020. (Exhibit N - Rule 5(c)(3) Documents from the Northern District of Georgia, Dkt. 21)

A properly instituted information that comports with 18 U.S.C. §3282(a), gives to the defendant "notice of the allegations of the charges contained therein." *United States v. Holmes,* 18-CR-000258-EJD at *9 (N.D.CA., 2020). Notice, as it relates to charges brought against a defendant, is "the central policy underlying the statute of limitations … That is, [the defendant] knows that he will be called to account for certain activities and should prepare a defense." *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990). Therefore, filing an information or superseding indictment, without notice to the defendant of the charges brought against them, violates due process and does not "institute" an action under 18 U.S.C. § 3282(a).

The United States appears to recognize the notice requirement. On April 15, 2020, the United States filed a Motion requesting to notify Ms. Winslow of the pending charges beyond just the filing and sealing of charging documents. (Exhibit

O - Notice of Filing Legal Authority / Motion for Permission to Notify Defendants of Existence of Information, Dkt. 3) However, despite acknowledging the need to provide Ms. Winslow with notice, she still was not notified.

Ms. Winslow never filed a waiver of the statute of limitations like her co-defendants did. The United States appears to have situational awareness of its issue with the statute of limitations related to this overall conspiracy: (1) the plea agreement with co-defendant Mary Marr contains specific language that waives the statute of limitations for Ms. Marr's charges. (Exhibit P - *United States v. Mary Marr,* 8:18-cr-167, Mary Marr Plea Agreement, Dkt. 252, p. 7, ¶ 3); (2) the plea agreement with co-defendant Michel Marc Chateau contains the same language (Exhibit Q - *Id*. Plea Agreement, Dkt. 129, p. 8, ¶ 3); so does the co-defendant with whom Ms. Winslow shares an indictment, Frank Viscario (Exhibit R - Plea Agreement, Dkt. 104, p. 7, ¶ 2). Counsel for Ms. Winslow believes a waiver of statute of limitations was filed  on Mary Marr's docket as she recalls seeing it in July of 2021, but after challenging the issue of statute of limitations, but this entry appears to have been sealed.

Timely notice is necessary to allow defendants to receive notice of the charges against them, establish a defense, and preserve exculpatory evidence. Here, Ms. Winslow did not receive notice until she was arrested. Therefore, because notice is a central component of the statute of limitations, filing an Information and

Superseding Indictment without notice to Ms. Winslow does not equate to instituting an action within the meaning of 18 U.S.C. §3282(a).

## B. Evidence from the Government of Mauritius was Excluded at Trial

On March 31, 2017, the United States submitted a MLAT request to the Government of Mauritius requesting bank records of accounts owned by "MARR and/or her co-conspirators, including Rachel (sic) Winslow, located in Mauritius." (Exhibit S - Sealed Document, Dkt. 5, pages 14, 15). The United States purports to have received Mauritius' response on September 18, 2019; the District Court viewed this date as the date Mauritius took "final action." (Exhibit F - Order, Dkt. 139, Page 9) Despite having Mauritius' response, Ms. Winslow was not charged by way of an Information for another six months, until April 2, 2020, and again later via a superseding indictment, until May 20, 2020.

As previously articulated, Ms. Winslow filed a motion to dismiss based on the statute of limitations. (Exhibit D - Motion to Dismiss Based on the Statute of Limitations and Incorporated Memorandum of Law, Dkt. 117) It was the MLTAT request to Mauritius that the District Court found had actually tolled the statute of limitations in this case. At trial, the United States sought to admit documents that were

allegedly obtained from the Government of Mauritius via the MLAT. (Jury Trial Day 1 - Trial Transcript, November 11, 2022, page 185) However, the District Court sustained Ms. Winslow's objection to authenticity and the United States' failure to provide a proper certification from the Government of Mauritius pursuant to the MLAT. (Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211) The District Court also sustained Ms. Winslow's objection of the United States' failure to comply with the requirements of 18 U.S.C. 3505 – Foreign records of regularly conducted activity. (Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211) Ms. Winslow objected to the documents allegedly from the Supreme Court of Mauritius as not certifying that they were made at or near the time of the occurrence of matters set forth; such record was kept in the course of a regularly conducted business, and that the business activity was made such a record as a regular practice. (Jury Trial Day 1 - Trial Transcript, November 11, 2022, page 185)

The District Court found that the documents were insufficient to prove and admit as foreign business records due to their lack of authenticity and noncompliance to the certification requirements of 18 U.S.C. 3505. (Jury Trial Day 1 – Trial Transcript, November 14, 2022, pages 185-187; Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211)

Prior to sustaining Ms. Winslow's objections, the Government was granted additional time to obtain the necessary certification from the Judge of the Supreme Court of Mauritius  (Jury Trial Day 1 - Trial Transcript, November 15, 2022, pages 185-187). Despite the additional time, the United States was still not able to obtain the necessary certification and the documents were excluded at trial. (Jury Trial Day 3 - Trial Transcript, November 16, 2022, pages 210, 211) The District Court also sustained Ms. Winslow's objections to the bank records from Deutsch Bank of Spain as an improper foreign record. *Id*.

Congress did not intend for MLAT requests to toll the statute in order to obtain foreign business records that were later found to be insufficient as foreign business records. A review of legislative history provides guidance. This Court in *United States v. Gabriel Torres,* 318 F.3d 1058 (11th Cir. 2003) provides a digestible summary:

> Indeed, the purpose of § 3292 "is to make foreign-kept business records more readily admissible into evidence in criminal trials in United States courts and to extend statute of limitation and Speedy Trial Act deadlines when evidence located in foreign countries must be obtained." H.R.Rep. No. 98-907, at 2 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3578, 3578. The statute furthers an important law enforcement objective. Congress was prompted to enact § 3292 as part of the Comprehensive Crime Control Act of 1984 by "[t]he [increasing] use of offshore banks to launder the proceeds of criminal activities" and the difficulty that federal prosecutors were having "in obtaining records from those banks in both the investigative and trial stages of a prosecution." *Id.* As the procedures to obtain such evidence "generally take a considerable period of time to complete," efforts to recover evidence located in foreign countries often resulted in statute of limitations problems. H.R.Rep. No. 98-907, at 2-3 (1984),

*reprinted in* 1984 U.S.C.C.A.N., at 3578-79. Thus, in enacting § 3292, Congress sought to facilitate the prosecution of these criminal acts by affording prosecutors enough time to obtain evidence located in foreign countries. *See id.* at 4, *reprinted in* 1984 U.S.C.C.A.N. at 3579 (recognizing that " [t]he bill also ... permits a Federal court, upon application of the prosecutor, to suspend the running of the statute of limitation for such time as is necessary (up to 3 years) to obtain evidence from a foreign country").

The Government should not enjoy the benefit of tolling the statute of limitations to obtain foreign-kept business records when those records did not qualify as foreign-kept business records *despite* the Government having *several years* to obtain foreign-kept business records and their proper authentications. Congress could not have intended this result.

II.     **Whether the District Court abused its discretion and committed plain error in concurring with the United States' leadership enhancement when imposing Ms. Winslow's sentence.**

*Enhancement for Leadership Role: three-level increase PSR ¶ 177*

There is no evidence to support any leadership role nor did anyone testify as to Ms. Winslow being in a leadership role. Under the commentary to U.S.S.G. § 3B1.1, the role enhancement applies only where the defendant is the "organizer, leader, manager, or supervisor of one or more other *participants*." (emphasis added). A "participant" is someone *criminally responsible* for the commission of the offense but need not have been convicted. The United States failed to describe and outline who the "participants" were, and what and how Ms. Winslow took a leadership role within the alleged conspiracy.

With regards to Mary Marr, her testimony at trial was that she herself was the leader and organizer. She testified that she directed others and did not testify as to Ms. Winslow having a leadership role in the alleged conspiracy. Her plea agreement contains numerous references to her being the leader of this alleged conspiracy. It also references other leadership roles without mention of Rachael Winslow, including the following, as mentioned in Ms. Winslow's sentencing memorandum:

a) "Marr ... **was the leader** of a large international fraud and money- laundering ring that operated out of the United States and elsewhere." [(Exhibit P - Dkt. 252, p. 20 ¶1];

b) "**Marr and her associate, Michael Marc Chateau** ... **operated** a network of funnel bank accounts in the United States." [Exhibit P - Dkt. 252, p. 20 ¶2];

c) "**Marr oversaw and directed** Chateau's money laundering activity." [Exhibit P - Dkt. 252, p. 20 ¶2];

d) "**Chateau recruited** Douglas Casimiri to open and operate some of the funnel bank accounts in Florida." [Exhibit P - Dkt. 252, p. 21, ¶1];

e) "**Chateau** recruited Douglas Casimiri's ex-wife Rose, and at least two other individuals to open and operate funnel bank accounts in the Middle District of Florida and other states." [Exhibit P - Dkt. 252, p. 21, ¶1];

f) "Marr recruited her friend, Albert Rivere, to open and operate some of the funnel bank accounts in Florida. [Exhibit P - Dkt. 252, p. 21, ¶1];

g) "**Marr instructed the coconspirators who worked** under her to register corporate entities with the State of Florida." [Exhibit P - Dkt. 252, p. 22, ¶2];

h) "Marr had access to and/or control over the bank accounts that Chateau, Douglas Casimiri, Rose Casimiri, Rivere, and the two other individuals **opened at her direction**." [Exhibit P - Dkt. 252, p. 21, ¶3];

i) "**Marr had access to and/or control over**, at least 34 banks." [Exhibit P – Dkt. 252, p. 23, ¶2];

j) "During this period, the bank accounts that **Marr had access to and/or control ove**r received incoming wires from boiler room fraud victims and other known funnel accounts controlled by **Marr, Chateau, and their coconspirators**;" [Exhibit P – Dkt. 252, p. 23, ¶2]

27

k) "One the victim funds arrived in the accounts, they were quickly wired out to ***other funnel accounts that Marr controlled***, including…" [Exhibit P – Dkt. 252, p. 23, ¶2]

With regards to Ronald Demboski, a co-defendant on Ms. Winslow's superseding indictment, he was posthumously indicted; he was never arrested nor pleaded guilty; he never testified and therefore was unable to speak to any role he or others may have held. His charges were dismissed. (Exhibit T – Order Granting Dismissal of Counts, Dkt. 53)

With regards to Frank Viscario, Ms. Winslow's other co-defendant, he did not testify at trial. His plea agreement contains language that states Mary Marr was the leader. It states, "Thereafter, ***at the direction of Marr***, among others, the defendant wired most of said funds to multiple.." (Exhibit R - Plea Agreement, Dkt. 104, p. 19, ¶2) It also does state "...the defendant wired victims' funds to boiler room sales agents as well as to overseas accounts in the ***names of entities controlled by Marr, Winslow*** and/or other conspirators." However, at trial, foreign bank account records from Spain and Mauritius were not admitted for consideration as they were not properly authenticated and therefore are considered unreliable and inadmissible. As the records have been previously deemed unreliable, the reference to Ms. Winslow's control of overseas accounts should be excluded when considering any potential leadership role.

With regards to Michel Marc Chateau, Mr. Chateau's testimony at trial did not include any leadership role with regard to Ms. Winslow. In fact, when asked how Rachael Winslow was involved with opening bank accounts, he replied, "***Mary told me***" and that "Ron Dembowski had opened bank account. Doug Casimiri. I mean, it's a lot of people I know that have ***worked for Mary*** that have opened bank account." (Jury Trial Day Four Transcript, page 104) Michel Marc Chateau's plea agreement contains language that states Mary Marr was the leader. At trial, he testified that "***The leader of that ring in the United States was Mary Kathryn Marr***." (Exhibit Q – Plea Agreement, Dkt. 129, p. 22. ¶2) Mary Marr's plea agreement contains language that Marr and Chateau had leadership roles, stating "***Marr and her associate, Michael Marc Chateau*** ... operated a network of funnel bank accounts in the United States;" (Exhibit P – Plea Agreement, Dkt. 252, p. 20 ¶2) "***Marr oversaw and directed Chateau's money laundering activity***;" *Id.* "***Chateau recruited Douglas Casimiri to open and operate some of the funnel bank accounts in Florida***." (Exhibit P – Plea Agreement, Dkt. 252, p. 21 ¶1)

With regards to Brooks Nesbitt, who was a witness at trial and indicted in a seperate indictment, he testified that he had only met Rachael Winslow once in Miami, for fun, and described Rachael as "**Mary's cleaning lady**." (Jury Trial Day 4 Transcript, pages 61, 62) He did not testify regarding a leadership role. Brooks Nesbitt's plea agreement contains language that Mary Marr was the leader. It

states, "Nesbitt was a member of a large international and money laundering ring. ***The leader of that ring in the United States was Mary Kathryn Marr***. ***Marr and her associate, Michel Marc Chateau*** contracted with ..." (Exhibit U – Plea Agreement, Dkt. 21, p. 22, ¶2); ***"Marr and Chateau operated*** a network of funnel bank accounts." (*Id*. at p. 22, ¶3)

Furthermore, at sentencing, Mary Marr is referenced as the leader by the Government several times. The District Court asked the Government, ***"So was Ms. Marr not a leader in Ms. Winslow's offense?"*** in which the Government responds, ***"Yes, she was***, *Your Honor, but notwithstanding that fact, she was permitted to plead guilty to this different period of time. It was part of the time that she was involved in the* conspiracy." (Exhibit V - Sentencing Transcript, Dkt. 307, ps. 14-15, ¶25) Later, the Goverrnment stated "… ***Mary Marr, because she was the <u>leader</u> and the <u>architect</u> of this entire money laundering operation***, *as I understand it…"* (*Id*. at p.15, ¶13)

Further, the Governments stated:

a) ***"Mary Marr is the one who started this,*** *and Michel Chateau got involved about the time Ms. Winslow, Mr. Visicaro and Mr. Dembowski did."* (Exhibit V - Dkt. 307, p.22, ¶10)
b) The Court: *"Are any of those people the Government is using to support its contention that Ms. Winslow was <u>**a manager in this case?"**</u>* (Exhibit V - Dkt. 307, p.24, ¶19)
c) Ms. Desvaux Bedke: ***"No, Your Honor."*** (Exhibit V - Dkt. 307, p.24, ¶22)

Not only does the Government explain to the Court in sentencing that Ms. Marr was the leader in response to the Court's direct question of leadership, the Government reaffirms that Ms. Winslow was involved but does not use language stating that Ms. Winslow was in charge or a manager. The Court erred when overruling Ms. Winslow's objection to leadership and the Court did so without explanation other than stating that Ms. Winslow's leadership role was due to the presentence report statement of her having a manager role. This is insufficient for an enhancement. The District Court should have considered USSG factors including the exercise of decision-making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others. (USSG § 3B1.1, Note 4.) That did not occur. If it had occurred, Ms. Winslow's objections to the enhancement would have been sustained as she was not a manager, supervisor, or leader.

Ms. Winslow was enhanced with a three offense level increase; the Government was required to prove that the alleged conspiracy was in fact organized, managed, or led by Ms. Winslow. The United States did not do so and the District Court should have sustained Ms. Winslow's objection to the leadership role.

III.    **Whether the District Court abused its discretion and committed plain error in not using the jury's special verdict when calculating forfeiture.**

The parties negotiated and agreed to a special verdict in this matter regarding the forfeiture amount. (Exhibit L - Proposed Verdict Form, Dkt. 168) The parties agreed that the verdict form and the instructions adequately addressed the amount of forfeiture. The Special Verdict for Forfeiture form specifically asked the Jury about two accounts - $525,595.62 seized from account number 968712307, in the name of Guardian Holding Group LLC, at JP Morgan Chase Bank, and $222,013.19 seized from account number 058817662, in the name of First Assured Contact LLC, at HSBC Bank, and whether they were property involved in the money laundering conspiracy. *Id*. On November 21, 2022, the jury found Ms. Winslow guilty of Count One of the Superseding Indictment. (Exhibit G- Jury Verdict, Dkt. 239) Thereafter, the jury deliberated as to forfeiture and found Ms. Winslow responsible for $525,595.62 and $222,013.19, for a total amount of $747,608.81. (Exhibit W - Jury Verdict on Forfeiture, Dkt. 240)

The District Court appropriately instructed the jury in a special jury charge regarding the two accounts and whether they were certain assets involved in the money laundering conspiracy. (Jury Instructions on Forfeiture agreed to by the

Parties, Dkt. 231). That instruction conformed with the Eleventh Circuit Pattern Jury Instructions (Forfeiture Proceedings, T-6)

The Supreme Court has suggested that special findings verdicts could be appropriate "where risk of prejudice to the defendant is slight and the advantage of securing particularized fact-finding is substantial." *Black v. United States*, 561 U.S. 465, 472 n.11 (2010) (citation omitted) A party who fails to raise an objection to a verdict from interrogatory or jury instruction prior to jury deliberations waives its right to raise the issue on appeal. *See Wood v. President of Spring Hill College,* 978 F.2d 1214, 1221 (11th Cir. 1992); *Golub v. J.W. Gant Assocs.,* 863 F.2d 1516, 1521 (11th Cir. 1989) (holding that "`objections to the form of interrogatories in a special verdict must be raised before the jury is charged... Otherwise, they are waived.'" (citation omitted)). This requirement ensures that a trial judge has an opportunity to correct any error before a jury has begun its deliberations. *See Landsman,* 864 F.2d at 726 (citing *Pate v. Seaboard Railroad Inc.,* 819 F.2d 1074, 1082 (11th Cir. 1987)). Courts have recognized only two exceptions to this rule: first, where a party has made its position clear to the court previously and further objection would be futile; and second, where it is necessary to "correct a fundamental error or prevent a miscarriage of justice." *Landsman,* 864 F.2d at 726 (citing *Lang,* 624 F.2d at

1279). This second exception is known as "plain error" review. *See Wood,* 978 F.2d at 1221.

Plain error review is an extremely stringent form of review. Only in rare cases will a trial court be reversed for plain error. In *Olano,* the Supreme Court outlined four requirements for plain error: first, an error occurred; second, the error was plain; third, it affected substantial rights; and finally, not correcting the error would seriously affect the fairness of the judicial proceeding. *United States v. Humphrey,* 164 F.3d 585, 588 n. 3 (11th Cir. 1999) (citing *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

The Eleventh Circuit has interpreted the *Olano* test strictly in the context of erroneous jury instructions and verdict forms. Moreover, a trial judge is accorded "wide discretion as to the style and wording employed" in jury instructions and verdict forms. *Carter v. DecisionOne Corp.,* 122 F.3d 997, 1005 (11th Cir. 1997) (citing *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1543 (11th Cir. 1996)). The Eleventh Circuit reviews jury instructions and verdict forms together rather than separately for reversible error. *See Carter,* 122 F.3d at 1005; *McNely v. Ocala Star-Banner Corp.,* 99 F.3d 1068, 1072 (11th Cir. 1996) (citing *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1569 (11th Cir. 1991)).

Here, the United States and the defendant jointly agreed upon a special verdict jury instruction and special verdict form as to the amount of forfeiture. Prior to closing argument, the District Court reviewed the final verdict form and the final jury instructions with counsel for both parties. The United States failed to raise any objection. The jury reached a decision. The United States did not object prior the beginning of jury deliberations. The United States does not have a basis for a different amount as to forfeiture; this issue was placed before the jury. The proper loss amount that Ms. Winslow should be held accountable for is $747,608.81. Ms. Winslow should have only been enhanced fourteen levels for this loss amount, not twenty offense levels enhancement based on the calculated loss amount of $14,401,052.00. *See* USSG §2B1.1(b)(1)(K).

## CONCLUSION

Based upon the foregoing argument and citations of authority, Ms. Winslow respectfully requests that this Court vacate the judgment of the District Court Judge and dismiss the superseding indictment for failure to comply with the statute of limitations.

Respectfully submitted,

*s/Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926

Rebecca@CastLF.com
The Castaneda Law Firm PLLC
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780
*Attorney for Appellant Rachael Winslow*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 7,743 words.

*s/Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
Rebecca@CastLF.com
The Castaneda Law Firm PLLC
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 30, 2024, the undersigned filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically transmit an electronic filing to all parties of record. I FURTHER CERTIFY that on January 30, 2024, a copy of the foregoing was sent to Rachael Winslow by U.S. Mail.

*s/Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
Rebecca@CastLF.com
The Castaneda Law Firm PLLC
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780